[County Commissioners of Calhoun Co. v. Woodstock Iron Co.]

# County Commissioners of Calhoun Co. *v.* Woodstock Iron Co.

*Certiorari to County Commissioners, in matter of Tax Assessment.*

1. *Statutory exemption from taxation.*—The provision contained in the statute approved April 23d, 1873, exempting from taxation, for the period of ten years, the buildings, factories, works and machinery of certain manufacturing and industrial enterprises (Sess. Acts 1872-3, pp. 72-6), is not a contract with any one of them organized and erected while the law was in force, but is only a legislative bounty, subject to repeal by subsequent legislation; and having been repealed by the statute approved February 1st, 1876 (Sess. Acts 1875-6, p. 100), the exemption from taxation then* ceased.

2. *Levy and assessment of taxes distinguished.*—State taxes are levied, not *under* the law, but *by* the law imposing the subjects and the rate of taxation; while county taxes are levied *under* the law, by an order of court legislative in its character; and while the former are assessed and collected *under* the law, the latter are only collected under it.

3. *Proviso and exception to repealing clauses of revenue laws of 1884-5.*—The repealing clause to the revenue law approved December 12th, 1884, contains a proviso which declares that "this repeal shall in no wise affect the assessment or collection of taxes under the law heretofore existing for the tax-year ending 31st day of December, 1884, or any previous year;" while the repealing clause of the subsequent act approved February 17th, 1885, providing for the assessment and collection of taxes levied by the former, contains a proviso which declares that "the laws in existence at the passage of this act, for the assessment and collection of taxes for State and county purposes, shall remain in full as to assessment and collection of taxes now assessed or levied under the provisions of said acts" (Sess. Acts 1884-5, pp. 21, 70) : *Held*, that the repeal, with its exceptions, was intended to be co-extensive as to each class of taxation, State and county alike; and that the word *levied*, as used in the proviso to the latter statute, was intended to preserve in force the levies of taxes for county purposes which had been made on the assessments for State taxation theretofore made.

4. *Assessment for escaped taxes; notice, and waiver of defects therein.*—When back taxes are assessed on persons or property which have escaped taxation during previous years, the assessor is required to make a report in writing to the County Commissioners Court, and notice must be thereon issued to the person from whom the tax is claimed (Sess. Acts 1884-5, p. 38, § 43); and if judgment by default is rendered against him, the record must set out the report and notice, showing a compliance with these statutory requirements; but, if the party appears, and contests his liability, raising no objection to the report or notice, this is a waiver of any defects in either.

APPEAL from the Circuit Court of Calhoun.
Tried before the Hon. LEROY F. BOX.

The appellee in this case, the Woodstock Iron Company, a private corporation, against whom taxes were assessed by the tax-assessor of said county, as the owner of a blast-furnace at Anniston, valued at $65,000, for back taxes during several years, being notified of the assessment, appeared before the County Commissioners, and contested its liability for the taxes assessed, claiming exemption from taxation under the provisions of the act approved April 23d, 1873, cited in the opinion of this court. The County Commissioners overruled the objections, and confirmed the assessment. The appellee then sued out a *certiorari* returnable into the Circuit Court; and on the hearing in that court, on the record sent up, the judgment of the County Commissioners was quashed and held void. An exception was duly reserved to this ruling and judgment, and it is here assigned as error. The material facts are stated in the opinion of the court.

THOS. N. McCLELLAN, Attorney-General, PETTUS & PETTUS, and R. L. ARNOLD, for the appellant.—(1.)  Before the Commissioners Court, the appellee claimed exemption from taxation under the provisions of the statute approved April 23d, 1873, and raised no other objection. But that statute simply offered a legislative bounty for the encouragement of manufacturing enterprises, and was subject to repeal at any time; and the exemption fell with the repeal of that law.—*Salt Co. v. East Saginaw*, 13 Wall. 373; *Church v. Philadelphia*, 20 How. 26; *Welch v. Cook*, 97 U. S. 541; *Mobile & S. H. Railroad Co. v. Kennerly*, 74 Ala. 566; Cooley on Taxation, 54, note, 145; Cooley's Const. Lim. 281. (2.) The writ of *certiorari* only brought up the question of jurisdiction, and errors apparent on the face of the record.—*McAllilley v. Horton*, 75 Ala. 491; *Camden v. Bloch*, 65 Ala. 236. Any defects in the notice, therefore, or in the proceedings under which the appellant came into court, are immaterial, and were waived because not objected to. (3.) But no notice was necessary, though one was given, because the proceedings were governed, not by the statute approved February 17th, 1885, but by the former law; and this by virtue of the proviso contained in the repealing clause to the later statute.—*Perry Co. v. Railroad Co.*, 58 Ala. 546; *State v. Board of Revenue*, 73 Ala. 65.

WATTS & SON, and CALDWELL & HAMES, *contra*.—(1.)  On *certiorari*, the questions presented relate to the jurisdiction of the court, and the regularity of the proceedings; and the proceedings are either quashed or affirmed.—*McAllilley v.*

*Horton,* 75 Ala. 492; *Camden v. Block,* 65 Ala. 236. (2.) The proceedings sought to be reviewed being summary and statutory, in the exercise of a jurisdiction special and limited, the record must affirmatively show every fact necessary to support the jurisdiction.—*Lehman, Durr & Co. v. Robinson,* 59 Ala. 219; *Carlisle v. Watts,* 78 Ala. 487; *Driggers v. Cassady,* 71 Ala. 529; *Wartensleben v. Haithcock,* 80 Ala. 565. (3.) The assessment shows on its face that it was made under the revenue laws of 1884-5, and the proceedings are void—1st, because no written report was filed in court by the assessor; 2d, because no sufficient notice was given to the appellee; 3d, because the law only authorizes an assessment of back taxes for five years, while the court assessed them for six years; and, 4th, because the lists filed by the assessor, on which the entire proceedings are based, and which the court seems to have accepted as a written report, specify only three years, and there is nothing to show how the other three years came before the court, or entered in any way into the proceedings.

STONE, C. J.—By statute approved April 23, 1873 (Sess. Acts, 1872-3, p. 73), the "buildings, factories, works and other machinery" of certain manufacturing enterprises, were declared exempt from all taxation, "for the period of ten years from the time the same shall be erected and put in operation." This was a general law, and no part of any statute incorporating a company, one or more. According to all the rulings, such statutes are construed as simply a bounty offered to stimulate industry; and even when factories are erected under the offered bounty, they do not amount to contracts, so as to be irrepealable. Subsequent legislatures may repeal such statutes, and the bounty ceases thenceforth.—*Salt Co. v. East Saginaw,* 13 Wall. 373; *Welch v. Cook,* 97 U. S., 341; Cooley on Tax. (2d ed.) 69; Cooley on Const. Lim. 281; *M. & S. H. R. R. Co. v. Kennerly,* 74 Ala. 566. No argument is made before us controverting this proposition.

By act approved Febuary 1, 1876,—Sess. Acts, 1875–76, 100,—the statute referred to above was repealed, and such manufacturing establishments became thenceforth taxable.

The Woodstock Iron Company was completed and put in operation in 1873, while the statute exempting such establishments from taxation was in operation. In 1885, the tax-assessor of Calhoun county attempted to assess the Woodstock Iron Company for escaped or back taxes, and made out several lists for preceding years, charging that company with a blast-furnace, valued at $65,000. This blast-furnace

was described as being in Anniston, Calhoun county, Alabama. Governed by the rate of State taxation, as fixed by the statute for each successive year, and by the per-centage for county purposes levied by the Court of County Commissioners for each year, the several lists each contained a statement in figures, of the sum claimed to be due for each year, alike for State and county taxes. These lists were returned to, and filed with the Court of County Commissioners.

The assessments in this case, as we have said, were made in 1885, and embraced six years,—from 1877 to 1882, inclusive. Section 31 of the revenue law, approved February 17, 1885,—Sess. Acts 1884–85, p. 33,—employs the following language : "Whenever the assessor shall discover that any person or property has escaped taxation in any previous assessment, he shall assess the taxes thereon for such years as such person or property has escaped taxation, within five years from that date." If the provisions of this section control this case, the authority to assess did not extend back beyond five years from the time it was made—August, or November, 1885. This would exclude the assessments for 1877, 1878, and 1879, as improperly made. There are evidences in the record that the assessments first made were for only the three years within the five years' limit—namely, for 1880, 1881, and 1882. We are not informed how the assessments for the three preceding years got into the record.

It is contended for appellant, that the "machinery law" of 1885,—Sess. Acts, 21,—has no application to the assessments made in this case ; and that the questions presented by this record must be determined by the law as it existed before February 17, 1885,—the date of the later enactment. Claiming this interpretation, it is contended that the statutory bar of five years does not apply to this case. Section 31, fixing the five years limit on assessments for escaped taxes, is found in what may be called the "machinery bill," which prescribes the rules and proceedings for the assessment and collection of taxes. It is entirely distinct from the "revenue law" proper, which simply *levies* taxes, by declaring the rate and subjects of taxation. The argument is based on the differing phraseology of the repealing clauses of the two statutes of 1885. The former—revenue law—after the general repealing clause, contains this proviso : "That this repeal shall in no wise, nor in any manner, affect the assessment or collection of taxes under the law heretofore existing for the tax year ending 31st day of December, 1884, or any previous year." The repealing

clause of the "machinery bill" is expressed differently. After the general repeal is this proviso : "That the laws in existence at the date of the passage of this act, for the assessment and collection of taxes in this State, for State and county purposes, shall remain in full force as to the assessment and collection of taxes now assessed or levied under the provisions of said acts."

The particular argument made in support of the construction claimed is, that while in the revenue law proper the proviso exempts from its operation only such taxes as had been "assessed or collected," the proviso in the machinery statute saves from repeal all taxes theretofore "assessed or levied under the provisions" of former laws. The phraseology being different, it is contended the interpretation must be different. Such is undoubtedly the general rule of interpretation.—*Lehman v. Robinson*, 59 Ala. 219.

State taxes are levied *by* legislative act—by the law itself. County and municipal taxes are also levied *by* an ordinance, order, or edict, legislative in its nature.—*Perry County v. S. & M. R. R. Co.*, 58 Ala. 546. State taxes are not levied *under* the law, but *by* the law. The legislature itself determines the subjects and rates of taxation. Hence, it would be an unnatural use of language to say, that State taxes are levied *under the law*. Only county taxes, as a subject of contention in this suit, are levied *under* the law. Giving to the statute a literal interpretation of its terms, it would, as to State taxation, exclude from the repeal only such taxes as had been assessed ; for they had not been levied *under the law ;* while, as to county taxation, we must presume there was a levy *under the law* for each and every year ; and therefore there was no repeal of the former statutes as to county taxation. We can not suppose the legislature intended a system so incongruous as this would be. We must strive to learn the sense in which the legislature intended to be understood, and to give to each phrase and word some meaning, if we can. The following is the best we can do. State taxes are assessed and collected *under the law*. County taxes are not assessed. They are only levied and collected *under the law*. We must suppose that the repeal and its exceptions were intended to be co-extensive as to each class of taxation, State and county alike. We hold, therefore, that the word "*levied*," found in the proviso to the repealing section of the machinery bill, was intended to preserve in force the levies of taxes for county purposes, which had been made on the assessments for State taxation theretofore made. It may not be out of place to remark, that the record before us furnishes proof

that the tax-assessor, in the assessment of escaped taxes against the Woodstock Iron Company, attempted to conform to the revenue statutes of 1885.

It is to be lamented that legislative assemblies so frequently attempt the enactment of an entirely new revenue system. To cover the entire ground—subject and rates of taxation, with machinery bill for assessing and collecting—will comprise one hundred and fifty sections or more, several of them so comprehensive as to require their subdivision into many sub-sections. The revenue statute of 1885, including the machinery bill, covers sixty-eight octavo pages, closely printed. No amount of learning, painstaking, or watchfulness, could master a system so comprehensive, without committing some mistakes or oversights. Nothing is perfect, when first invented. Steam and electricity, as motors, have been much improved upon since the first attempts were made to utilize them. Would it not be safer and wiser to retain a system, which has been tried and found reasonably good, and resort only to amendment of imperfections, as experience or changed conditions may render alterations necessary?

The grounds urged in this court for an affirmance of the ruling of the Circuit Court, are rested mainly on section 43 of the "machinery act," approved February 17, 1885,—Sess. Acts, 38. It provides that, "in all cases where a tax is claimed from persons, or on property, as escaped taxation, the tax-assessor shall report the same in writing to said Court of County Commissioners, who, upon five days written notice to the person or party from whom it is claimed, to be served by said assessor," etc., shall "allow, modify, or reject the claim, as the justice of the case upon the evidence produced may require." The particular objection urged in this case is, that the tax-assessor made no report to the Court of County Commissioners, of the alleged assessment made by him, and that no sufficient notice of the same was served on the Woodstock Iron Company.

It would seem that, to comply with this statute, the tax-assessor should have reported to the Court of County Commissioners, and in writing, the assessment he had made, setting forth the name of the owner, or reputed owner, if obtainable, the property assessed, with sufficient description, the value he had fixed upon the property, and the taxes, State and county, assessed upon it. And written notice, setting forth the essential facts of such assessment, should be given as the statute requires. Such notice should inform the tax-payer when the claim will be considered, "allowed, modified, or rejected." These steps are

[County Commissioners of Calhoun Co. v. Woodstock Iron Co.]

necessary to impart jurisdiction in summary proceedings; and the record in the present case, if there be nothing to take it out of the operation of the rule, the proceeding being in its nature summary and statutory, must be pronounced fatally defective.

But summary and statutory proceedings may, by the incidents and conduct of the trial, be taken without the influence of these technical rules, and assume the properties of a general jurisdiction, with all the liberal intendments pertaining thereto. In *Smith v. Branch Bank*, 5 Ala. 26, the rule and its exception were summarized, as follows : "The result of all the cases in this court, upon summary judgments rendered on motion, is, that when the judgment is by default, it must appear, by the judgment of the court, that the defendant had the notice which the law requires, and that the facts were proved which give the court jurisdiction, and show the liability of the defendant for the debt or penalty. If the defendant appear, it will be evidence of notice; and if issue is made up, and submitted to a jury, it is then like any other cause commenced in the ordinary mode, except that it must appear upon the record that the court had jurisdiction to entertain the motion." *Broughton v. Robinson*, 11 Ala. 922, was a summary proceeding on motion and notice, and certain irregularities in the proceedings were objected to. This court said : "In the present case, it appears the defendant contested the right of the plaintiff to a recovery, and tendered several issues. This, in our judgment, relieved the other party from all necessity to prove the particular matters required by the statute."—*Curry v. Bank of Mobile*, 8 Por. 360, 372–3; *King v. Armstrong*, 14 Ala. 293; *Rutherford v. Smith*, 27 Ala. 417; *Ratliff v. Allgood*, 72 Ala. 119.

It can not be gainsaid that, in this case, the court had jurisdiction of the subject-matter. The statute confers it in express terms. Section 43 of the statute provides, that said court "shall, at any regular or special term, proceed to allow, modify, or reject the claim, as the justice of the case upon the evidence produced may require." The assessment of escaped taxes is not complete until it has been considered and passed on by the court of County Commissioners.

Was there notice? A notice was issued and served. Whether sufficient or not, we need not inquire. The Woodstock Iron Company appeared by counsel, and controverted the assessment at every step. It raised no question as to the manner in which the assessment was reported to the court, nor to the form of notice it had received, to appear and defend. It did appear, and did interpose motions and

[Frenkel v. Hudson.]

objections, questioning not the form of the assessment, but its liability to be assessed. In the petition presented to the Circuit Court for *certiorari*, to obtain a review of the judgment of the court of County Commissioners allowing and approving the assessment, is the following language : "That on the 17th day of November, 1885, the tax-assessor, one J. V. Rhodes, of Calhoun county, Alabama, notified your petitioner that he, Rhodes, as tax-assessor for Calhoun county, Alabama, had assessed petitioner's blast-furnace in the said town of Anniston, for escaped taxes for the years 1877, 1878, 1879, 1880, 1881, and 1882, at a valuation of sixty-five thousand dollars per year, with further notice to petitioner to appear before the court of County Commissioners for Calhoun county, Alabama, on the 23d day of November, 1885, for the purpose of suggesting such objections to said assessment as your petitioner might deem necessary." The ground on which the review and quashal were moved for, was not the want of, or defect in the report and notice of the assessment. It, like the defense before the court of County Commissioners, went to the merits, and claimed exemption from taxation under the act approved April 23d, 1873. Not until the case reached this court was any question raised on the sufficiency of the report and notice of the assessment. Conceding that both were omitted, the Woodstock Iron Company waived the omission, by appearing and defending on the merits.

The tax-assessor had no authority to assess for a longer period back than five years from the date of the assessment. This excludes the assessments for the years 1877, 1878, and 1879 ; and as to them, the judgment of the Circuit Court is free from error. The assessments for the years 1880, 1881, and 1882, were rightly made ; and as to them, the judgment of the Circuit Court is reversed, and here rendered, dismissing the petition, and quashing the *certiorari*.

Reversed and rendered.