## Pierce *v.* City of Huntsville.

### *Certiorari to Review and to Quash Street Assessment Proceedings.*

(Decided November 27, 1913. Rehearing denied February 5, 1914. 64 South. 301.)

1. *Municipal Corporations; Municipal Assessment; Review.*—The theory of a writ of certiorari to review municipal assessments for street improvements must be that the proceedings for the assessment appears upon the face of its record to be without the power and jurisdiction of the municipal authorities acting in the premises.

2. *Same; Notice to Property Owners; Publication.*—The statute having specified no means whereby the fact of publication of notice to property owners of an assessment for public improvement should be shown, the ascertainment by the municipal authorities that notice had been duly published, etc., a record of the finding of such facts and the manner of the publication afforded the only evidence thereof, and no other evidence was necessary to show a compliance with the statute in such respect.

3. *Same; Assessment; Time.*—Under section 1370, Code 1907, a resolution adopted by the city commission purporting to assess the benefits for an improvement before the work was completed was void for want of jurisdiction.

4. *Same; Invalid Levy; New Assessment.*—Where the commissioners illegally attempted to pass a resolution levying an asssesment for street improvement before the improvements were completed, they had authority and jurisdiction, after discovering the error and after the completion of the work to give notice and levy a new

[Pierce v. City of Huntsville.]

assessment; and this is true notwithstanding a suit had been instituted by a property owner in the circuit court to cancel the original assessment. It was not necessary to formally rescind the prior assessment or to begin a new and independent proceeding for the improvement.

5. *Same; Ordinance or Resolution; Permanent Operation; Adoption.*—Resolutions of municipal boards calling for bids for paving streets, ordinances adopting or accepting bids and fixing assessments for benefits are not ordinances or resolutions of a general and permanent nature within sections 1185, 1252 and 1258, Code 1907; such ordinances were properly adopted in accordance with article 26 of the Code of 1907.

6. *Same; Notice; Publication.*—The fact that the notice of an assessment of property for street improvement was published in a newspaper owned, edited and published by one of the municipal authorities was not ground for invalidating the assessment notwithstanding the provisions of section 19, Acts 1911, p. 348.

·7. *Same; Hearing.*—The city commissioners were not disqualified from hearing objections to the levy of the special assessment for municipal improvement because they were also acting for the municipality, on the theory that they were acting as judges in their own case.

8. *Same; Judicial Proceedings.*—The proceedings authorized by statute for hearing objections to the levy of special assessments for street improvements, is not objectionable as lacking the essential characteristics of a judicial proceeding.

9. *Constitutional Law; Due Process; Municipal Improvement Notice.*—Publication of a notice of a contemplated levy of a special assessment for street improvement in a reasonable manner, is a general public notice, and constitutes due process of law, as the law presumes that it will reach the cognizance of the owner to be affected.

10. *Trial; Reception of Evidence; Prejudice.*—Where a final resolution confirming the assessment for street improvement and fixing it as a charge against petitioner's property as shown by a record of the proceedings recited the fact that the requisite publication notice to property owners had been made in compliance with the statute and when and where the publication was made setting out a copy, such record having been introduced in evidence sufficiently shows the giving of such notice, and the property owner was not prejudiced by the admission of proof aliunde the record of the contents of the notice, and its publication, etc.

APPEAL from Madison Law and Equity Court.

Heard before Hon. JAMES H. BALLENTINE.

Certiorari by Nannie H. Pierce to bring up for review the record and proceedings instituted by the city of Huntsville against petitioner for an assessment against her property for street improvement. From an order quashing the writ, petitioner appeals. Affirmed.

SPRAGINS & SPEAKE, for appellant. The court below decided this case upon the authority of *City of Birmingham v. Wills,* 59 South. 173, and *Garner v. City of Anniston,* 59 South. 654. Assuming that these cases assert good law, they are distinguishable from the case at bar and certainly not decisive of all the points here involved. The assessment of July 1911, was ineffectual to create a lien and void because it nowhere appears from the record that the work had been completed or accepted by the city, which is the beginning of the city's power to assess.—Sec. 1370, Code 1907. This being true, and such proceedings having been superseded by certiorari pending and undetermined in the circuit court, the city council was without authority to proceed to make a new assessment.—6 Cyc. 800; section 1380, Code 1907; *Garner v. City of Anniston, supra.* The ordinances and resolutions here attempted were of a permanent character, and designed to have a permanent operation, and are not passed in accordance with the statutory requirement.—Secs. 1185, 1252, (as amended Acts 1909, p. 205) and 1258, Code 1907. The publication was not due process of law so as to affect one on whom notice could be served personally.—Rule 22, Cir. Ct. Pr. section 5158, Code 1907. In matters of common law certiorari, parol evidence is not admissible but the matters and things must be determined solely by the record.—*Webb v. McPherson,* 142 Ala. 543. The publication was void and ineffectual because made in a paper owned, edited and published by one of the city commissioners.—Sec. 1193-4, Code 1907; Acts 1909, p. 207; Acts 1911, p. 348. On rehearing counsel insist that the proceedings for reassessment could not be had while the original assessments remained undisposed of.—28 Cyc. 1192. Relative to the ordinance being of a permanent character and intending to operate permanently, coun-

[Pierce v. City of Huntsville.]

sel cite.—*Michael v. State,* 163 Ala. 485; 11 Fed. 47; 97 Pac. 1007; 60 Atl. 1128; 31 N. E. 606; 19 O. Cir. 311; McQuill. Mun. Ord. section 9; 6 Wds. Jhr. 5310; 28 Cyc. 1010. On the illegality of the publication of notice in a paper owned, edited and published by a member of the city commission, the following additional authorities are cited.—*Sunflower Co. v. Turner Co.,* 158 Ala. 191; *Youngblood's Case,* 95 Ala. 523; *W. U. T. Co. v. Young,* 138 Ala. 243; *Yarbrough v. Avant,* 66 Ala. 526; *Gunter v. Lecky,* 30 Ala. 591; *Ellis v. Batson,* 58 South. 193.

DAVID A. GRAYSON, for appellant. The cases of *City of Birmingham v. Wills,* 59 South. 173, and *Garner v. City of Anniston,* 59 South. 654, are conclusive of every point raised by petitioner. The statute gives the right of appeal and certiorari will not lie.—Page & Jones on Taxation by Assessment, section 1395 and cases cited. The record shows everything requisite.—*Decatur v. Brock,* 54 South. 209; Page & Jones, section 1402. Evidence aliunde the record may be introduced.—4 Enc. P. & P. 281 and cases cited. The fact that proceedings were pending will not prevent the city from reassessing.—4 Dill. on Mun. Corp. 2641; 28 Cyc. 1018, note 77. It is the duty of the clerk and not the commissioners to give the notice, and hence, the fact that the publication was made in the paper owned and edited by one of the city commissioners does not vitiate the notice.

SAYRE, J.—By the common-law writ of certiorari appellant sought to have the Madison law and equity court review and quash a proceeding assessing the cost of an attingent street improvement against her property. On the hearing the writ was quashed, after which this appeal was taken.

The theory of the writ of certiorari in such cases is that the proceeding for the assessment appears upon the face of its record to be without the power and jurisdiction of the municipal authorities acting in the premises, and so null and of no effect.

After a certified copy of the record of the proceeding of the city council and the city commissioners—a government by commission having been established pending the proceeding under authority of the act of April 21, 1911 (Acts 1911, p. 591 et seq.)—had been exhibited to the court to sustain the assessment, defendant was allowed to show aliunde the record the contents of the notice which had been published in a newspaper advising property owners that the assessment book was ready for inspection, and that the commission would sit at a designated time and place to hear objections, in pursuance of sections 1377-1379 of the Code. Appellant's objection was that the notice should be shown by the record and not otherwise. Our judgment is that the notice was shown by the record, and that the error of admitting other evidence, if it was error, was harmless. The final resolution confirming the assessment and fixing it as a charge against appellant's property as shown by the record of the proceedings had by the city council and the board of commissioners, recited the fact that the requisite advertisement had been made in compliance with the statute, to wit, in the Mercury Banner, a newspaper published in the city of Huntsville, and of general circulation therein, on the 15th day of April, 1912, setting out a copy of the same. The statute evidently contemplates a record of proceedings for local assessments, and a record of some sort could not well be dispensed with. It provides, for example, that on appeal to the circuit court the cause "may be tried on the record without other pleadings."—Section 1394. It

provides that the clerk of the city shall, when an appeal has been taken, send to the clerk of the circuit court "a transcript of all the proceedings of the council relating to such assessment." The record here shown contains a finding by the commission as to how, when, where, and of what publication had been made, all in agreement with the statutory requirements. The statute having specified no means whereby the fact of publication should be shown, the ascertainment by the commission and a record of the commission's finding afforded the only possible record evidence of a publication in compliance with the statute. No other evidence was necessary.

Shortly after the commission came into existence it proceeded to consider the assessment roll which had been prepared under the direction of the city council, and adopted a resolution fixing the assessment previously made for the improvement of Holmes street "from its intersection with Fifth street and Pratt avenue to Rison street." The record shows that in all previous proceedings the proposed assessment had been described as for the improvement of Holmes street "from its intersection with the west property line of Pulaski road or pike to its intersection with the east property line of Pratt avenue and Fifth street." The statute provides (section 1370 of the Code) that if the improvement be finally ordered and constructed, the council shall have power and authority, after completion and acceptance thereof, to assess the cost of constructing said improvement, or any part thereof, upon and against the property abutting on any street, etc. The resolution first adopted by the commission may, perhaps must, be construed as an effort to fasten the cost of the improvement upon abutting property in advance of a completion of the work as theretofore proposed. It, there-

fore, lacked authority of law. It may be conceded that the commission's first effort to deal with the assessment in question was defective and ineffectual. Afterwards, as the record shows, the board of commissioners—appreciating no doubt the error of its previous proceeding—caused notice of the assessment for the improvement of Holmes street, in accordance with the resolution to that end which had been adopted in the beginning, to be published, and thereafter proceeded in due course to fix the assessments as charges upon the property of abutting owners. Appellant denies the right of the commissioners to retrace their steps in this manner. Her contention just at this point seems to be that, where fundamental irregularity has intervened in the course of a proceeding, it is requisite to a valid assessment that the pending proceeding should be formally rescinded and a new and independent proceeding be set on foot. We do not appreciate the necessity for a formal rescission of so much of a record as appears on its face to be infected with fatal fundamental error, nor do we see the necessity or occasion in such case of carrying the process of rehabilitation back further than the specific error appearing. There is no reason why steps properly taken previous to the error should be retraced. The integrity of the proceeding, the completeness of the record, due process according to the provision of the statute, and all the rights of property owners, may be preserved in the manner of procedure adopted in this case. In *Garner v. Anniston,* 178 Ala. 430, 59 South. 654, speaking of the procedure on appeal to the circuit court, or other court of like jurisdiction, in cases arising under the statute for local assessments, we said: "If fundamental error be shown in the record, the proceeding, so far as it touches the interest or property of the party appealing, shall be abated or held for naught, in which

case (section 1380) supplementary proceedings may be had, in order to supply or cure the defect." True, we added: "We take the last-mentioned provision (section 1380) to mean that as to the party appealing a reassessment may be had, in which the council or municipal board must begin anew and retrace its steps"—but we were speaking in a case in which the original resolution, which must mark the beginning of every proceeding for the levy of a local assessment was in question.

Appellant showed in her petition for certiorari that she had gone to the circuit court with her grievance immediately after those errors appeared which marked the first effort of the commissioners, and without waiting for further action by the commission, that the circuit court had taken jurisdiction, and that the proceeding was still pending in that court. Appellant contends that the pendency of the questions raised by the certiorari in the circuit court deprived the board of commissioners of the power to proceed to the correction of errors which we may suppose it was the purpose of the application to the circuit court to have corrected. We do not think so, but it will suffice for this case to say that we have before us no evidence of the pendency of the proceeding in the circuit court.

Section 1252 of the Code provides that: "No ordinance or resolution intended to be of permanent operation shall be adopted by the council at the same meeting at which it is introduced, unless unanimous consent of those present is given for the immediate consideration of such ordinance or resolution, such consent to be shown," etc. Section 1258 provides for the publication of ordinances or resolutions of a general or permanent nature. Section 1185 provides for the transmission of ordinances and resolutions intended to be of

a permanent operation to the mayor for approval, etc. Appellant urges that at various points the transcript of the record of the proceedings had for the assessment in this case shows a failure to comply with these statutes. She says, for example, that the resolution providing for publication for bids on the paving work was adopted at the same meeting at which it was introduced; was not approved by the mayor; was not published as an ordinance of a permanent nature, etc. So of the ordinance accepting the bid. So of the last ordinance adopted by the board of commissioners fixing the assessment. Our opinion is that the ordinances and resolutions complained of, constituting steps in a proceeding which reached from the original resolution or ordinance determining that the improvement should be taken to the final ordinance or resolution fixing the assessment and providing for payment for the completed work, are not the ordinances or resolutions contemplated by those sections of the Code relating to the passage, approval, and authentication of ordinances and resolutions of a permanent nature or intended to be of permanent and general operation. The proceeding for the assessment of the cost of a street improvement against the abutting property is administrative and judicial in its character. It is also local and special, and when its end is once accomplished, it is no longer a rule of conduct, but its interest is historical and evidential only. It is then consigned to the limbo of things which have served their purpose. The procedure in such cases is laid down with great detail in article 26 of the chapter on Municipal Corporations beginning at section 1359 of the Code. Only such formalities and publications as are prescribed in that article are essential to the validity of the special proceeding there provided for. There was in this case no lapse in the observance of the requirements of

that article, and the result of the proceedings had must be approved, confirmed, and established.

Appellant further complains that the publication ordered by the board of commissioners was made in a newspaper owned, edited, and published by one of the commissioners, and hence that a process so "conceived in sin and shapen in iniquity" cannot serve the purpose and end of that due process which is required by the law of the land. It is provided (Code, §§ 1193, 1194) that neither councilmen nor aldermen shall be interested in any work, business, or contract, the expense, price, or consideration of which is paid from the treasury. Substantially the same inhibition is applied to commissioners where a commission form of municipal government is established.—Act April 8, 1911, p. 330, § 19. There is no statutory provision invalidating publications of notice made in the circumstances of which appellant complains. The element of publication by which the owners of property are affected and in which they are therefore interested is merely the fact of publication in a newspaper answering the requirements of the statute as to place of publication and generality of circulation.

Proceedings of this sort under review, though differing in some material respects from ordinary proceedings for the levy and collection of taxes, have root in the sovereign taxing power of the state. They must be so contrived and administered as to reach all property owners alike. If personal notice may be dispensed in one case it may in another. The theory on which constructive service is permitted in such cases is that no owner can hold his property exempt from the liabilities, duties, and obligations which the state has a right to impose because he may not be reached by personal process. "In such cases some substantial form of notice has always

been held to be a sufficient warning to the owner of the proceedings which are being taken under the authority of the state to subject his property to those demands and obligations.   Otherwise the burdens of taxation, and the liability of such property to be taken under the p\
er of eminent domain, would be useless in regard to very large amount of property in every state of the Un ion."—5 Encyc. U. S. S. C. Repts. 651.   Publication in a reasonable manner is a general public notice, which the law presumes will reach the cognizance of the owner to be affected, and is due process.   The necessity for proceeding on such notice and its secure foundation in the principles of justice are too well established to be now questioned.—Id.

Appellant complains also that she has not been given a hearing by an impartial tribunal.   She notes that the municipal authorities, as agents of the public, instituted the proceeding for the assessment against her property, superintended the procedure, and passed upon her objections, although it was really the municipality, the public generally, for whose benefit the proceeding was had and the assessment made.   In short, she objects, the city council and the board of commissioners were judges in their own case.   It is fundamental that no man shall be judge in his own case, and due process requires an impartial tribunal.   But it is settled that this principle, or these principles, do not exclude citizens from sitting as judges or jurors in cases in which the interests of the community in which they live are placed in opposition to the interests of private persons, nor do they extend to the action of municipal authorities in levying special assessments.—*Hibben v. Smith,* 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195; *Lent v. Tillson,* 140 U. S. 316, 11 Sup. 825, 35 L. Ed. 419.

Another objection, taken in rather a general way, to the effect that the proceeding authorized by the statute

lacks the essential characteristics of a judicial proceeding, has been considered by this court in *City of Birmingham v. Wills,* 178 Ala. 198, 59 South. 173. Certainly there would have been no lack of judicial form in the circuit court, or other court of like jurisdiction, to which appellant might have taken her case by appeal. Still other objections were considered in *Garner v. Anniston,* 178 Ala. 430, 59 South. 654. There is no occasion for a restatement of the considerations which influenced the conclusions reached in those cases.

Affirmed.

DOWDELL, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.