57 So.2d 629

NEWBERRY v. CITY OF ANDALUSIA et al.

4 Div. 686.

Supreme Court of Alabama. .

March 10, 1952.

Brogden & Brogden and Edw. H. Brogden, all of Andalusia, for appellant.

Jas. M. Prestwood, Andalusia, for City of Andalusia.

Lawrence Dumas, Jr., Birmingham, for Thornton, Mohr & Co.

Robt. B. Albritton, Andalusia, for Gulf Naval Stores Co.

54

<br>

**55**

Lawrence K. Andrews, Union Springs, for Alabama League of Municipalities, amicus curiæ.

GOODWYN, Justice.

This is a declaratory judgment proceeding questioning the validity of Act No. 756, approved September 6, 1951, Acts of Alabama 1951, page 1307, and certain action taken pursuant thereto by the City of Andalusia.

The decree of the lower court, which contains both a finding of facts and declaration with respect to the issues involved, is as follows:

"The Court Hereby Finds the Following Facts:

"The Respondent the City of Andalusia, has authorized the issuance of $1,300,000 of its First Mortgage Industrial Development Revenue Bonds to be dated February 1, 1952, and maturing over a period of ten years (herein called the 'Bonds') under and pursuant to Act No. 756, General Acts of Alabama, approved September 6, 1951; and said City has contracted to sell the Bonds to the Respondent, Thornton, Mohr & Company. The Bonds are to be issued under and pursuant to a Mortgage and Indenture of Trust by and between the City of Andalusia and The First National Bank of Montgomery, as Trustee.

"A copy of said Mortgage and Indenture of Trust is attached to the bill of complaint as Exhibit 'A', and it is herein referred to as the 'Mortgage'. The Bonds and the Mortgage were authorized by a duly adopted resolution of the City Council of the City of Andalusia which fully identified the Mortgage and the Bonds but failed to set them forth therein in full. Said resolution was published in a newspaper published and of general circulation in the City of Andalusia.

"The proceeds of the Bonds are required to be deposited in the Industrial Development Construction Fund, a trust fund, under the Mortgage, and to be used to pay a part of the cost of constructing for the City of Andalusia a plant to extract naval stores from pine stumps (herein called the 'Project'). The Respondent Gulf Naval Stores Company has entered into a contract with the City of Andalusia entitled 'Contract to Sell and Convey Land, to Construct thereon and Lease a Plant', dated January —, 1952, a copy of which is attached to the Application for Declaratory Judgment as Exhibit 'B' and which is hereinafter referred to as the 'Contract'. By the terms of the Contract the Gulf Naval Stores Company agrees to sell to the City of Andalusia 39 acres of land located in Covington County, within 15 miles of the City, for a cash consideration of $6,000 to be paid from the proceeds of the Bonds. Gulf Naval Stores Company is also obligated by the Contract to build upon said land for the City of Andalusia the Project. The Project is to be fully completed with all necessary furnishings and machinery, ready to operate and capable of performing its intended function of extracting naval stores from pine stumps. The Project, when completed, is required to have a going concern value of at least $1,800,000 and the Gulf Naval Stores Company is obligated by the Contract to pay all costs of construction in excess of the proceeds of the Bonds available therefor.

"The Gulf Naval Stores Company is also obligated by the Contract to lease the Project from the City when the Project is completed and conditioned upon the completion thereof, for a term of ten years at a stipulated monthly fixed rent. The fixed rent is required to be paid to The First

National Bank of Montgomery, as Trustee, deposited in the Industrial Development Bond and Interest Fund, a trust fund under the Mortgage, and used to pay the principal of and interest on the Bonds. The fixed rent is sufficient to pay the principal of and interest on the Bonds as they come due.

"The Gulf Naval Stores Company is also obligated by the Contract to pay as additional advance rent one-third of its annual net earnings from the Project or one-fourth of the combined annual net earnings from the Project and its other plants and operations, whichever is greater. This advance rent is required to be used first to build up and maintain a Reserve Account in the Industrial Development Bond and Interest Fund of $50,000 to assure the payment of the principal of and interest on the Bonds, and all advance rent in excess of such amount is required to be used to redeem the Bonds in the inverse order of maturities.

"The Gulf Naval Stores Company is obligated by the Contract to pay the cost of maintenance and insurance of the Project. No reserve fund in connection with the payment of the cost of maintenance and insurance of the Project has been set up or established by the City of Andalusia.

"The Contract grants to Gulf Naval Stores Company the option to extend the original term of the lease for eight additional periods of five years at a nominal rent of not exceeding $1,000 per year.

"The Bonds are limited obligations of the City of Andalusia, payable solely from the rent, revenues and income to be derived from the leasing of the Project. It is specifically provided in the proceedings authorizing the issuance of the Bonds, in the Mortgage and in the face of the Bonds, that they 'shall never constitute an indebtedness of the City of Andalusia within the meaning of any state constitutional provision or statutory limitation, and shall never constitute or give rise to a pecuniary liability of the City of Andalusia or a charge against its general credit or taxing powers.' The Project will, upon the basis of the foregoing facts, be self-liquidating.

"The City has covenanted in the Bonds and the Mortgage that the Bonds and interest thereon and also the Project and any revenues derived from any leasing thereof, shall be exempt from all taxation under the laws of the State of Alabama.

"The Mortgage requires the City of Andalusia to keep the Project leased at all times at a rent sufficient to pay the principal of and interest on the Bonds and to keep the Project in good maintenance and repair and to maintain adequate insurance thereon. It requires the City to make such renewals, replacements, extensions and improvements as are necessary to keep the Project leased. The Mortgage permits the City of Andalusia, and the Contract permits the Gulf Naval Stores Company, to elect to apply insurance proceeds paid on account of damage or destruction to the Project to the repair or reconstruction of the Project.

"The Mortgage provides that so long as the Bonds are outstanding the City of Andalusia will not construct or finance or cause to be constructed or financed any enterprise competitive with the Project.

"The issuance of the Bonds and the construction and leasing of the Project are for the purpose of acquiring for the City of Andalusia a new industry, which will provide for the owners of property in Covington and the surrounding Counties a market for hitherto useless and detrimental pine stumps and which will provide employment for the citizens of the City of Andalusia and a pay roll to improve business and commerce in the City of Andalusia and the surrounding territory.

"Now, Therefore, It Is Hereby Ordered, Adjudged, Decreed and Declared as follows:

"1. That Act No. 756, General Acts of Alabama, approved September 6, 1951, under and pursuant to which the Bonds have been authorized and are to be issued, contains but one subject, which is clearly expressed in the title to said Act and said Act complies in every respect with Section 45 of the Constitution.

"2. That the Bonds are limited obligation revenue bonds and are not an indebted-

ness of the City of Andalusia within the meaning of Section 225 of the Constitution.

"3. That the Bonds are not 'bonds' of the City of Andalusia within the meaning of Section 222 of the Constitution; and it is therefore not required by law that an election be held on the question of whether or not said bonds should be issued.

"4. That neither the issuance of the Bonds nor the leasing of the Project to the Respondent Gulf Naval Stores Company under the Contract nor the exercise by the City of Andalusia of the power and authority granted by said Act No. 756, is a violation of Section 94 of the Constitution.

"5. That the issuance of the Bonds and the leasing of the Project are for a lawful and proper public purpose, to the benefit and welfare of the citizens of Andalusia and the surrounding territory, and accordingly all powers and authority granted to the City of Andalusia by said Act No. 756 were within the power of the Legislature of Alabama to grant and were properly granted to and exercised by the City of Andalusia.

"6. That the covenant of the City of Andalusia in the Bonds and the Mortgage that the Bonds and the income therefrom and the Project and any revenue derived from the lease thereof, shall be exempt from all taxation in the State of Alabama, is a valid covenant made pursuant to Section 11 of said Act No. 756 and will constitute a binding contract by and between the City of Andalusia and the holders of the Bonds, so long as the Bonds are outstanding, and will not be subject to impairment by future legislation.

"7. That said Act No. 756 contemplates the completion of a manufacturing plant in such condition that it will be suitable for use, rental and the production of revenues. The City of Andalusia is therefore empowered and authorized by said Act to purchase, construct and install, pipe, water fixtures and connections, furnaces, heating pipe fixtures, and connections, electric wiring, transformers, outlets, fixtures and connections, hardware and floor finishing, and all machinery and equipment necessary to complete the Project into a plant suitable for and capable of extracting naval stores from pine stumps.

"8. The obligation of the City of Andalusia in the Mortgage with respect to a repossession of the Project from a defaulting lessee, to make such alterations and improvements therein as are necessary to enable the City to lease the Project to some other lessee and to lease and keep the Project so leased, do not violate Section 6 or any provision of said Act No. 756 but are legal, valid and binding obligations of the City of Andalusia.

"9. That the option of the City of Andalusia in the Mortgage and the option of Gulf Naval Stores Company in the Contract to employ insurance proceeds in the rebuilding or reconstruction of the Project in the event of damage to or loss or destruction thereof by fire or other casualty, is authorized by the provisions of said Act No. 756; and said options are valid and legal.

"10. That the leasing provisions of the Contract are specifically made to be 'conditioned upon the completion of the Project' and are therefore in full compliance with Section 6 of said Act No. 756.

"11. That the lease of the Project to Gulf Naval Stores Company under and pursuant to the Contract is not a 'franchise' within the meaning of Section 228 of the Constitution and said Section therefore has no application; and the option reserved in the Contract to renew the lease for eight additional periods of 5 years each at a nominal rental not to exceed $1,000 is a valid provision authorized by said Act No. 756.

"12. That Section 6 of said Act No. 756 does not require the setting up of any reserve fund in connection with either the retirement of the Bonds or the maintenance of the Project, unless deemed advisable by the governing body of the issuing municipality; and the City of Andalusia is therefore not required to set up any reserve fund.

"13. That the right of the City of Andalusia under the Contract to acquire from the Respondent Gulf Naval Stores Company, for a cash consideration of $6,000, payable solely from the proceeds of the

sale of the Bonds, the real property upon which the Project is to be constructed is not an 'equity' within the meaning and intent of Section 9 of said Act No. 756. Accordingly the provisions for the acquisition of real property set forth in the Contract are legal, valid and proper.

"14. That the covenant by the City of Andalusia not to construct or finance any competing project while the Bonds are outstanding, violates no provision of said Act No. 756, is a necessary protection, both to the holders of the Bonds and the Lessee of the Project; and such covenant is a valid and binding undertaking of the City of Andalusia.

"15. That the resolution authorizing the execution of the Mortgage and the issuance of the Bonds is a valid enactment by the City Council of the City of Andalusia and properly identifies and is a sufficient authorization for the execution of the Mortgage though not set forth therein in full except by reference to a filed copy of the Mortgage, and is a sufficient authorization for the issuance of the Bonds though the text of the Bonds and the provisions relating thereto are not set forth in said resolution except by reference to the Mortgage.

"16. That said Act No. 756 is a valid and constitutional enactment of the Legislature of Alabama. The Bonds, the Mortgage and the Contract hereinabove referred to, are fully authorized by said Act No. 756 and by a valid and effective resolution of the City of Andalusia and are legal, valid and binding obligations of the parties thereto in all respects.

"This 9th day of February, 1952."

There are sixteen assignments of error with a separate assignment, in corresponding numerical order, going to each of the numbered paragraphs of the decree.

### Assignment of Error No. 1.

■ Section 45, Constitution of 1901, provides, in part, as follows: " * * *. Each law shall contain but one subject, which shall be clearly expressed in its title, * * *; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length."

Appellant contends that Act No. 756 violates section 45 in two particulars. First, that instead of containing but one subject it contains four subjects, as follows: (1) the issuance of municipal bonds; (2) the leasing by municipalities of industrial or commercial plants or buildings; (3) the investment of the funds of savings banks and insurance companies; and (4) taxation. Second, that the following provision in section 4 of Act No. 756, viz.:

"The bonds issued hereunder shall be subject to the general provisions of law, presently existing or that may hereafter be enacted, respecting the execution and delivery of the bonds of a municipality and respecting the retaining of options of redemption in proceedings authorizing the issuance of municipal securities",

"extends or confers" the provisions of other bond laws by reference without such laws being "re-enacted and published at length." These objections are not well taken.

■ Many decisions of this Court support the proposition that a number of different branches of the same general subject may be included in one bill if they are all germane and cognate to and have a general connection with the one principal subject. In re Opinion of the Justices, 216 Ala. 469, 113 So. 584; In re Opinions of the Justices, 228 Ala. 140, 152 So. 901; Rogers v. Garlington, 234 Ala. 13, 173 So. 372; Atkinson v. City of Gadsden, 238 Ala. 556, 192 So. 510; Brammer v. Housing Authority of Birmingham District, 239 Ala. 280, 195 So. 256; In re Opinion of the Justices, 249 Ala. 180, 30 So.2d 715. The title to the bill merely describes various matters embraced in the Act, but all of which are pertinent and germane to the one general subject.

■ The other contention of appellant is that the Act violates Section 45 of the Constitution because it incorporates by reference the general provisions of law relating to the execution and redemption of bonds. It is our view that the Act is complete and intelligible within itself and does not in any sense revive, amend, extend or confer the provisions of any existing law in

violation of Section 45. City Council of Montgomery v. Birdsong, 126 Ala. 632, 28 So. 522; Newton v. City of Tuscaloosa, 251 Ala. 209, 219, 36 So.2d 487.

### Assignments of Error Nos. 2 and 3.

■ The appellant contends that the bonds are an "indebtedness" of the City of Andalusia in excess of the limit thereon prescribed by Section 225 of the Constitution, and also that they are "bonds" of the City to be issued, without an election, in violation of Section 222. The bonds described in the Mortgage and Indenture of Trust are revenue bonds, payable solely from the proceeds of the project. These are the only bonds authorized by Act No. 756, supra. Both the mortgage and the Act prohibit the City of Andalusia from making any contribution of money or property to the project. It is to be financed solely from the proceeds of the revenue bonds, and the bonds so state. The bonds, therefore, are not an "indebtedness" within the meaning of Section 225 of the Constitution, nor "bonds" within the meaning of Section 222. In re Opinion of the Justices, Ala.Sup., 53 So.2d 840; Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859; Bankhead v. Town of Sulligent, 229 Ala. 45, 155 So. 869, 96 A.L.R. 1381; Smith v. Town of Guin, 229 Ala. 61, 155 So. 865. The fact that the bonds are secured by a foreclosable mortgage in no way affects the questions here considered. In re Opinion of the Justices, 252 Ala. 583, 42 So.2d 348; In re Opinion of the Justices, Ala.Sup., 53 So.2d 840.

### Assignment of Error No. 4.

The appellant strenuously insists that the issuance of the bonds and the leasing of the project to Gulf Naval Stores Company, a partnership, is a violation of Section 94 of the Constitution.

■ Section 94 provides: "The Legislature shall not have power to authorize any county, city, town, or other subdivision of this State to lend its credit, or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in any such corporation, association or company, by issuing bonds or otherwise."

The opinion has been heretofore expressed that Section 94 applies to cases where a municipality or a county incurs a pecuniary liability, and does not apply in cases where the entire cost of the project is financed by the issuance of municipal revenue bonds payable solely from the income or rentals of the project. In re Opinion of the Justices, Ala.Sup., 53 So.2d 840;[1] In re Opinion of the Justices, 254 Ala. 506, 49 So.2d 175. In the former opinion, 53 So.2d 840, 843, construing the act before its passage when pending in the Legislature, the Court said: "None of the evils which Section 94 of the Constitution of Alabama, 1901, is designed to eliminate are involved in the actions of a municipality authorized by Senate Bill No. 436."

Act No. 756, supra, varies in no material respect from Senate Bill No. 436.

■ The appellant seeks to differentiate this case from the proposition considered in the Opinion of the Justices, Ala.Sup., 53 So.2d 840. He urges that the contract of lease between the City of Andalusia and Gulf Naval Stores Company grants to Gulf Naval Stores Company the right to renew the lease, at its option, for eight additional periods of five years each, at a "nominal" rental of not exceeding $1000. It is observed that at the end of ten years, all revenue bonds issued to finance the project will have been paid in full and the City will own the project debt free. From then on it will be leasing to Gulf Naval Stores Company for a "nominal" rental only, so the appellant contends, and the appellant concludes that the options, therefore, constitute a grant of a thing of value in aid of a private individual or association, in violation of Section 94 of the Constitution.

A lease of public property without consideration is certainly a violation of Section 94, but here we do not have such a case. Under the contract of lease and exhibits thereto the City of Andalusia, in its capacity as owner-lessor, is to lease the project to Gulf Naval Stores Company for a ten

[1] 256 Ala. 162.

year initial term with the option to extend the term of the lease for successive five year periods, the total of such terms of extension not to exceed forty years, which, as will hereinafter appear, has been reduced to twenty years. The appellant's contention does not take into account the fact that the options to renew are a part of the present contract of lease. The lease, with its options to renew for successive five year periods, is entered into today, not ten years after the completion of the project. The project is required to have an appraised going concern value of at least $1,800,000 upon completion. The City of Andalusia is to furnish from the revenue bonds proceeds not exceeding $1,300,000 which, with interest thereon, is to be fully repaid by lessee by the fixed rental payments. The City contributes not one penny. The contract of lease obligates Gulf Naval Stores Company to build the plant and to pay all construction costs in excess of the $1,300,-000. The contract contemplates that it will cost Gulf Naval Stores Company an additional $500,000. There is nothing in the contract to limit Gulf Naval Stores Company's contribution to this figure and, if construction costs should run in excess of the estimate, its contribution to the cost might well run over $500,000. This cost of the project in excess of the City's contribution from bond proceeds, unlike the payment of fixed rentals provided for in the contract of lease, must be paid by the lessee at the outset of the contract as an advance or prepaid expenditure necessary to the subsequent occupancy and use of the improvements.

Hence, it is clear that the obligation of the lessee to pay this portion of the cost of construction is, in and of itself, a present consideration for the execution of the lease with its options to renew. Furthermore, as additional consideration for the renewal terms, the lessee is obligated to pay for the maintenance of and insurance on the improvements, not only during the ten year term of the lease, but during all optional renewal periods as well. We hold therefore that there is no constitutional interdiction which inhibits the city, through its governing body, acting in good faith, from determining that this contract is a fair and reasonable rental for the prescribed period.

This Court cannot presume bad faith nor will we inquire into the adequacy of consideration for a lease appearing on its face to have been approved in good faith by the governing body of a municipality. Pilcher v. City of Dothan, 207 Ala. 421, 93 So. 16; State ex rel. City of Mobile v. Board of Revenue and Road Commissioners of Mobile County, 209 Ala. 98, 95 So. 374; Carson Cadillac Corp. v. City of Birmingham, 232 Ala. 312, 167 So. 794; Van Antwerp v. Board of Commissioners of City of Mobile, 217 Ala. 201, 115 So. 239.

### Assignment of Error No. 5.

There is no merit to the appellant's insistence that the Legislature lacks the power to authorize a municipality to own or lease projects of the type authorized by Act No. 756. Except insofar as specifically limited by the Constitution of Alabama and the Constitution of the United States, the full legislative power of the State is vested in the Legislature. Section 44, Constitution of 1901; State ex rel. French v. Stone, 224 Ala. 234, 139 So. 328; Sheppard v. Dowling, 127 Ala. 1, 28 So. 791, 85 Am.St.Rep. 68. That a state Legislature has the power to authorize revenue bond financing of industrial development projects to be leased to private persons is in accord with the prevailing view in other states. Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80; Holly v. City of Elizabethton, Tenn.Sup., 241 S.W.2d 1001; State v. City of Tallahassee, 142 Fla. 476, 195 So. 402; Poole v. City of Kankakee, 406 Ill. 521, 94 N.E.2d 416.

### Assignment of Error No. 6.

There is no merit to the appellant's contention that the covenant in the mortgage that the bonds and income thereon shall be exempt from all taxation in the State of Alabama is invalid. The statute which authorizes the issuance of municipal bonds, as well as the resolution by which they are authorized, becomes a part of the contract between the issuing municipality and the holders of the bonds. The freedom of such contract from impairment by

future legislation is guaranteed by the Constitution of the United States as well as by the Constitution of Alabama. Howard v. State ex rel. McGarry, 226 Ala. 215, 146 So. 414; State ex rel. Lindsey v. Howard, 227 Ala. 208, 149 So. 252; Port of Mobile v. Watson, 116 U.S. 289, 6 S.Ct. 398, 29 L.Ed. 620; Town of Samson v. Perry, 5 Cir., 17 F.2d 1. Statutory tax exemptions in favor of bondholders are a part of the contract and as such are free from impairment. Macallen Co. v. Commonwealth of Massachusetts, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874, 65 A.L.R. 866, rehearing denied 280 U.S. 513, 50 S.Ct. 14, 74 L. Ed. 585; State v. Alabama Bible Society, 134 Ala. 632, 32 So. 1011.

The appellant makes no insistence with reference to the covenant that the project itself shall be exempt from ad valorem taxation. Accordingly, we do not pass on that question. In this connection, see the case of County Commissioners of Calhoun County v. Woodstock Iron Co., 82 Ala. 151, 2 So. 132. We also note that Section 91 of the Alabama Constitution grants tax exemptions for the property of municipal corporations.

### Assignment of Error No. 7.

 The appellant's contention that Act No. 756 does not authorize the acquisition of any fixtures, machinery or equipment for a project is without merit. The literal language and clear intent of the Act authorizes the acquisition, by purchase, construction or lease of a "project," which is defined to include lands, buildings, other improvements, "and all real and personal property deemed necessary in connection therewith, whether or not now in existence, which shall be suitable for use" as an industrial or commercial enterprise. It would defeat the whole intent and purpose of the Act (which is specifically set forth in Section 2 thereof) to say that it authorizes the construction of a shell of a building but does not authorize the machinery necessary to place it in operation as an industry or plant. The Act requires a project to be self-liquidating and prohibits the operation of a project by a municipality. All the

other provisions of the Act fortify this view.

 The language and intent of the Act being clear, we need not resort to extrinsic aids in arriving at its true meaning. State v. Praetorians, 226 Ala. 259, 146 So. 411; City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159.

### Assignment of Error No. 8.

 The covenant by the City of Andalusia to repossess the plant from a defaulting lessee, to keep the plant leased and make such alterations, extensions and improvements thereto as are necessary to keep it leased, is of course not binding in the sense that it involves the City in any pecuniary liability. And it is to be noted that the obligation of this covenant, and the other covenants set forth in the Mortgage and Indenture of Trust, are limited by Sections 28 and 48 thereof. Both of these sections state clearly that a breach of covenant by the City gives rise to no pecuniary liability. In other words, the City's obligation, even for breach of covenant, is limited to bond proceeds and lease rental income, and if there is not sufficient money from these sources for the City to perform its covenants, the City is not otherwise obligated. So construed, this covenant is valid. Act No. 756 must be construed as authorizing the City to undertake to keep a project leased in order that it may be self-liquidating and the bonds shall be paid. Those acts which tend to promote this purpose, though not specifically stated in haec verba in the Act, are authorized by necessary implication. It is not necessary that the act itself shall spell out every detail which is to be included in a bond resolution or a mortgage and indenture of trust.

### Assignment of Error No. 9.

 What we have said above applies to the provisions requiring the use of insurance proceeds to repair, reconstruct or rebuild the damaged or destroyed project. The appellant's insistence on the invalidity of the mortgage and contract provisions that insurance proceeds may be so applied is, therefore, without merit. Section 6 of the Act refers to insurance. That is suf-

ficient authorization. It is certainly not necessary that the Act go into more minute detail and make specific provision as to how insurance proceeds shall be applied.

### Assignment of Error No. 10.

The appellant's contention that the contract of the City to lease to Gulf Naval Stores Company does not comply with Section 6 of the Act is without merit. The obligation of Gulf Naval Stores Company to lease is made "conditioned upon the completion of the project." That is all the Act requires. The construction contended for by the appellant would make the Act unworkable.

### Assignment of Error No. 11.

Appellant questions the authority of the governing body of the City of Andalusia to make a contract of lease which will, at the option of the lessee Gulf Naval Stores Company, extend to a possible total of fifty years. All parties have made known to the Court that they are agreeable to a lease for a ten-year initial period with the option to the lessee to renew or extend for four successive terms of five years each, a total of not exceeding twenty years of extensions, and, in view of this circumstance, the appellant has indicated that he would not insist upon a ruling on those renewals extending beyond this time. Clearly the contract of lease is valid to the extent of thirty years. Mobile Electric Co. v. City of Mobile, 201 Ala. 607, 79 So. 39, L.R.A. 1918F, 667. In view of the agreement of the parties, this Court will not now consider those optional renewals which would cause the contract of lease to extend beyond a total of thirty years.

Appellant's insistence that Section 228 of the Constitution is applicable here in limiting the lease to a total of thirty years is not well taken. Section 228 deals with the use of a city's "streets, avenues, alleys, or public places" by certain named public utilities. It has no application to this case.

### Assignment of Error No. 12.

The appellant complains that the Mortgage and Indenture of Trust provides no reserve fund for maintenance. Section 6 of Act No. 756 does not require any such reserve fund. The matter of reserve funds is entrusted to the discretion of the governing body of the municipality.

### Assignment of Error No. 13.

The appellant's contention that the right of the City to acquire land under its contract with Gulf Naval Stores Company is an "equity," which the City is prohibited from contributing to the project by Section 9 of the Act, is without merit. When Section 9 of the Act refers to "equity," it means some property interest of an equitable nature which is owned by the City or which the City has acquired by the use of its tax funds. To construe the Act to prohibit the use of property which the City has contracted to acquire and pay for solely from the proceeds of the revenue bonds would defeat the whole intent and purpose of the Act.

### Assignment of Error No. 14.

The appellant makes no insistence upon this assignment of error, and it is accordingly eliminated from consideration by the Court. Rules of Practice in the Supreme Court, Rule 10, Code 1940, Title 7, Appendix.

### Assignment of Error No. 15.

The appellant contends that the Mortgage and Indenture of Trust and the bonds will not be valid, because the resolution authorizing their issuance was not published. There is no requirement in Act No. 756 that a resolution authorizing the issuance of bonds or a mortgage and indenture of trust be published. The resolution does not come within the requirement of Section 462, Title 37, Code 1940, that all "ordinances or regulations * * * of a general or permanent nature" be published. As stated in Vol. 5 McQuillin, Municipal Corporations, 3rd Ed., § 16.77, ordinances of a general and permanent nature are "those constituting municipal legislative acts." The resolution here was in the exercise of a ministerial function. Town of Linden v. American LaFrance & Foamite Industries, 232 Ala. 167, 167 So. 548; Nashville, C. & St. L. Ry. Co. v. Town of Boaz,

226 Ala. 441, 147 So. 195; Holley v. Brunson, 221 Ala. 572, 130 So. 173; Pierce v. City of Huntsville, 185 Ala. 490, 64 So. 301; Michael v. State ex rel. Welch, 163 Ala. 425, 50 So. 929.

#### Assignment of Error No. 16.

The appellant contends that the provisions of the mortgage authorizing the trustee thereunder to take possession of and maintain, insure and lease the project in the name of and for the account of the City in the event of default by the City under the mortgage, is not authorized by Act No. 756. This contention is without merit. It is not necessary that the details of remedies be spelled out in an act which grants authority to issue bonds. Section 5 of Act No. 756 authorizes, in the event of a default, remedies (a) by mandamus, (b) by the appointment of a receiver in equity, and (c) by the sale of the project at foreclosure. All of these are more rigorous and expensive remedies than possession and leasing by the trustee, which amounts to no more than an informal and inexpensive consent receivership by the trustee. The real purpose of having a trustee is to protect the bondholders and to have some one who can act quickly to cure defaults under the mortgage. This remedy is clearly within the purview of the Act.

We have considered in this opinion only those errors insisted upon by the appellant. We will not undertake to examine each and every provision of the Mortgage and Indenture of Trust, the resolution of the City Council, the contract between the City and Gulf Naval Stores Company, and Act No. 756, to ascertain whether they are, in all respects, valid or constitutional. Accordingly, to the extent herein considered, and as herein modified, the decree of the lower court is affirmed.

Modified and affirmed.

All the Justices concur, except BROWN and FOSTER, JJ., who dissent.

FOSTER, Justice (dissenting).

Taking the project here contemplated as a whole, I think it violates section 94 of the Constitution. That feature of the Constitution prohibits the Legislature from authorizing a city to lend its credit or grant public money or thing of value in aid of or to any individual, association or corporation. That means one engaged in a private enterprise, and not one which is for a public use. It is not confined to lending of money to any such private person, association or corporation, but embraces anything of value.

The expression in our older cases of the purpose sought to be accomplished by this provision of the Constitution should not be construed as limiting it to monetary transactions. Prior to the first appearance of this provision, which was in the Constitution of 1875, a city's power was embraced within its charter provisions and their implication. At that time it was held by this Court that the provisions of the charter which authorized a city to purchase all the real estate and personal property as may be required for the use, convenience and improvement of the city, did not authorize a city to purchase property to be used as a county fair ground by a fair association. City of Eufaula v. McNab, 67 Ala. 588.

Section 94, supra, prohibits the Legislature from authorizing a city to do that. So that, subsequent to the adoption of section 94, a city has occupied a status similar to that which it occupied prior to the adoption of section 94, when it was under a charter provision which did not authorize it to acquire property for other than a public use.

It is my belief that the plan outlined, now before us, shows the acquisition of property by the City of Andalusia for the purpose of turning it over to a private enterprise not for public use, and therefore the principles laid down in the case of City of Eufaula v. McNab, supra, are analogous to those which apply at the present time under section 94, supra. If a county fair is not a public enterprise, certainly an enterprise whose object is to extract resin and turpentine from pine stumps for sale to the public is not a public enterprise.

By this transaction a private corporation, not affected with a public interest, would obtain benefits which are not otherwise available as follows: (1) freedom from ad

valorem taxation; (2) income tax benefits; by assuming that the payments to be made of the bonds and other cost of constructing the plant are for its use as a current operating expense, though the amount of it is not conditioned upon or affected by the rental value of the property; and (3) the designation of the bonds as municipal bonds, whereas the city is in no way responsible for their payment and has assumed no duty in respect to them which imposes a liability on it, and they are for the sole benefit of a private business corporation. The city will obtain a deed to the property in question and apparently lease it to a private corporation, as if the lease were substantial in fact.

I think that section 94 of the Constitution prohibits the legislature from authorizing a city to acquire property for the purpose of turning it over to a private corporation to enable it to receive benefits which are only available to the city as a municipal corporation.

I am authorized to say that Mr. Justice BROWN concurs in this dissent, and that he also wishes to include in his dissent the reasons expressed by him in a dissenting opinion from that of other members of the Court in Re Opinion of the Justices, 256 Ala. 162, 53 So.2d 840.