STATE v. CITY OF TALLAHASSEE.

195 So. 402
En Banc
Opinion Filed March 26, 1940

*Ausley & Ausley* and *Orion C. Parker, Jr.,* for Appellant; *James Messer, Jr.,* for Appellee.

TERRELL, C. J.—This appeal is from a final decree validating $300,000 of 4 per cent Administration Office Building Certificates issued by the City of Tallahassee pursuant to authority vested in it by Chapter 20158, Acts of 1939. The purpose of said certificates was to construct an office building in which space would be rented to Federal, State and county governments.

The first question with which we are confronted is whether or not the erection of an office building by the City for rent is a municipal purpose such as would authorize the expenditure of municipal funds as contemplated by the Constitution and laws of Florida.

Chapter 20158, Acts of 1939, authorizes the City of Tallahassee to issue office building certificates to construct an office building, said certificates of indebtedness to be payable solely from the revenues derived by the City from the operation of the building or from the operation of its electric light system or from the operation of its water system or from all three sources. The resolution for the issuance of the certificates limited their payment to revenues derived from the operation of the building and they were voted for on that basis.

It is competent for the Legislature to define a municipal or county purpose as contemplated by the Constitution. Airports, golf courses, school buildings, and other structures have been authorized and constructed under similar circumstances and the courts have upheld them as being proper municipal enterprises. Here we have an office building for rent declared to be a municipal purpose. The following cases would seem to conclude this question in favor of the power of the City to construct the building: State v. Gor-

don, 138 Fla. 321, 189 So. 437; City of Sacramento v. Adams, 171 Cal. 485, 153 Pac. 908; State v. City of Lawrence, 79 Kan. 234, 100 Pac. 485; Merrick v. Amherst, 12 Allen (Mass.) 500; and State *ex rel.* Board of Commissioners v. Clausen, 95 Wash. 214, 163 Pac. 744.

Whether or not under the Constitution of Florida a municipality may go into the business of constructing rental properties and compete with private. owners in that field is purely a matter of policy which the Legislature may regulate. In the instant case, the Legislature has answered that question in the affirmative in the interest of what it deemed to be a public necessity. The answer to what is a municipal purpose is not static. Each generation may determine its concept of these things.

It is next contended that the election called and held to approve the issuance of said office building certificates is void because the requisite number of freeholders did not participate therein and that some of those who did participate were not qualified to vote in such an election.

The election was held pursuant to Chapter 14715, Acts of 1931, and Section 6, Article IX, of the Constitution. It appears that there were 764 freeholders in the city qualified to vote in the election, that 606 actually participated, of whom 492 voted to issue the certificates and 109 voted against issuing them. Section 6 of Article IX provides that bonds may be issued on the approval of a majority of the votes cast at an election in which a majority of the freeholders who are qualified electors, residing in the city participate. We hold that the issuance of the certificates brought in question follow the same rule, so an inspection of the vote cast readily reveals that there is no merit to this contention.

As to the qualification of those who participated in the

election, Sections 3, 4, and 5 of Chapter 14715, Acts of 1931, under which the election was held is the sole criterion. It is shown that the registration books of the city were opened for the registration of electors as required by this Act, that the registration books were used as a guide in the election and that only those who were shown to be duly qualified were permitted to vote. This was sufficient.

The next question challenges the validity of the office building certificates in that the ballot used at the election failed to contain the words "for bonds" and "against bonds" to direct the voter in expressing his choice on the main issue.

This objection is rendered nil by reason of the fact that voting machines have been adopted and provided for all elections in Tallahassee and Leon County and the law providing for them authorizes a different form of ballot and means for the elector to express his choice in such elections. There is no suggestion that the applicable law was not complied with.

It is next contended that the resolution providing for the issue of the certificates is void because it provides for the appointment of a receiver to take charge of the office building in the event of default in payment of installments thereon.

Construction of the office building is a self-liquidating project and Chapter 20158, Acts of 1939, in terms authorizes the appointment of a receiver to take charge of the building in the event of certain defaults. A similar provision was approved by this Court in Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677.

It is last contended that the provision of the resolution for the issue of the office building certificates authorizing the City to rent and pay for space therein for its own purposes

had the effect of vitiating the provision of the ballot used in the election to the effect that no ad valorem taxes or other revenues except rentals from the building be used to redeem the certificates.

There is no merit in this contention. The resolution, the vote, and the contract as a whole are definite and certain that the certificates must be paid from revenues secured from operating the building, but in the event such an abuse should become prevalent as the question suggests, it may be enjoined in the manner provided in Williams v. Town of Dunnellon, *et al.*, 125 Fla. 114, 169 So. 631.

We find no constitutional objections to the certificates brought in question so the judgment of the chancellor is affirmed.

Affirmed.

WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J., dissents.

WHITFIELD, J. (concurring).—The proposed Administration and Office Building Certificates can legally be validated only because the certificates and the proceedings for issuing the certificates expressly and specifically exclude the pledge or use of any taxing or property resource of the city for the payment of the certificates, and the proceedings for issuing the certificates and constructing the building expressly and specifically exclude the use of such municipal taxation or other resource for the construction, equipment, furnishing, maintenance or operation of the proposed building, except that the proceeds derived from the use of the building when rented shall be used exclusively for paying such certificates and for the maintenance and operation of the building that is to be constructed, furnished and equipped solely by use

of the proceeds derived from the sale of the authorized certificates.

The provisions of Chapter 20158, Acts of 1939, relative to the use of funds derived directly or indirectly from taxation or from the public utilities of the city cannot legally be applied to the payment of the proposed certificates, or for the construction, equipment, furnishing, maintenance or operation of the proposed building, because to so apply such statutory provisions would violate the provisions and intendments of Section 5, Article IX, of the Constitution.

Assuming that under Section 8, Article VIII, of the Constitution the statute may and does authorize the particular building project, Section 5, Article IX, of the Constitution forbids the use of municipal taxation and property rights acquired by taxation including municipal public utility property and funds derived therefrom, in paying for the proposed certificates or for the construction, equipment, furnishing, maintenance or operation of a building for the main purpose of renting it to other governmental units with intent to rent and use for municipal purposes only such portion of the building as may not be otherwise rented.

TERRELL, C. J., BUFORD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J. (dissenting).—The construction and operation of an office building, and the renting of space therein, for profit, is not, in my opinion, a municipal purpose within the meaning of our Constitution. To do so, no matter how laudable the purpose, is a departure from municipal functions, and an invasion by the municipality of the field of private business, which even the Legislature cannot, in my opinion, constitutionally authorize. The statute here involved attempts to authorize the City to engage in a business

or commercial enterprise, which, though private in nature, may also, as most legitimate business enterprises do when successfully operated, contribute to the general public welfare of the community. A municipal grocery or clothing business, or a municipally operated hotel, or a municipal drug store, might also render some public benefit. But for municipal government to enter the field of private business, as distinguished from municipal ownership and operation of necessary public utilities, is a departure from sound and well settled principles of constitutional law, as I understand them. See Dillon on Municipal Corporations, Section 1291, *et seq.;* McQuillin on Municipal Corporation, (2d ed.) Section 1952, *et seq.;* 19 R. C. L. 95; 43 Corpus Juris 1330-1337.

I am convinced that to uphold the constitutionality of the statute here involved, Chapter 20158, Acts of 1939, and the proposed action of the City thereunder, as evidenced by the contract now before us, would set an unsound and dangerous precedent.

For a city, which does not have to pay taxes on property held for municipal purposes, to enter private business in competition with its private citizens, on the theory that it is a public purpose, is, in my opinion, an encroachment upon these vital and fundamental personal and property rights guaranteed to the individual by the Bill of Rights contained in our Florida Constitution, and is also contrary to the spirit of that provision of Section 5 of Article IX which prohibits municipalities from levying taxes for any other purpose than a muncipal purpose. If a city cannot levy taxes for any other than a public or municipal purpose, it is impliedly prohibited from engaging in any enterprise, even though it is to be paid out of the profits thereof, if such enterprise is not a municipal purpose within the meaning of

the Constitution, but is, in fact, in its nature and character, predominantly a private business or commercial enterprise —as much so as a mercantile business is. It is true that the special Act authorizes the acquirement of the building for the use of municipal departments, but it also authorizes the rental of all of the building except such part as the City may use. Thus the City can retain one small office room for its own use, and rent out the balance, and the revenue certificate contract indicates that this is what is to be done, and obligates the city to pay rent for such part of the building which it does use.

It was held in Hoskins v. City of Orlando, 51 F. (2d) 901, that a city vested with the power to buy and own property for municipal purposes cannot purchase a 99-year lease on an apartment house in operation; that the purchase by a municipal corporation of an apartment house in operation is so remote from the ordinary purposes of municipal government that such purchase is not presumptively valid, but apparently invalid. It was further held in that case that the city could not buy an apartment house as a mere investment.

Though due weight will be given to the legislative determination, the question of what is a municipal function or purpose is ordinarily for judicial determination. West v. Town of Lake Placid, 120 So. 361, 97 Fla. 127; City of Bradenton v. State, 102 So. 556, 88 Fla. 381.

Much more might be said on this vitally important subject, but enough has been said above to outline the reasons which impelled me to dissent from the opinion and decision of the Court in this case.