TERRELL, Justice.
This appeal is from a final decree of the Circuit Court, Eleventh Judicial Circuit of Florida, validating school bonds of Special Tax School District No. 1, Dade County, in the sum of $34,500,000. Special Tax School District No. 1 comprises all of Dade County. At the request of the Board of Public Instruction, dated August 16, 1955, the Board1 of County Commissioners, pursuant to Chapter 30682, Special Acts of 1955, called for re-registration of the freeholders in the district. The registration books were opened from September 7, 1955, through October 11, 1955, at the place designated, notice thereof having been published in the Miami Herald and the Miami Daily News September 1, 8, 15, 22, 29 and October 6, 1955.
■September 7, 1955, following receipt of a resolution and petition from the Board of Trustees of the District, the Board of Public Instruction of Dade County, in compliance with Sec. 236.37, Florida Statutes 1955, F.S.A., adopted a resolution listing projects determined by it.to be essential to the school program of the district. The Board of Public Instruction also determined that the said bond issue was essential to provide and complete said projects and meet the school needs of the district. The resolution of the Board of Public Instruc *420 tion and the bond issue were approved by the , State Superintendent of , Public Instruction September 12, 1955, and on September 14 the Board of Public Instruction adopted a resolution confirming its resolution of September 7, 1955, providing for holding of the freeholders election to approve issuance of said bonds. It appears that 77,254 freeholders registered and qualified to vote in said election which was held October 25, 1955. It further appears that 66,082 freeholders voted in said , election; that 60,854 voted to issue said bonds and 5,228 voted against the bond issue.
The resolution of September 7, 1955, shows that the indebtedness of the district, including the bonds so authorized, will aggregate $51,946,000, which is less than '20 percent of the assessed valuation of the taxable property within the district. The petition to validate was duly filed, notice and order to show cause were duly entered, served and published. Answer was seasonably filed by the state attorney and at final hearing, Jánuary 10, 1956, an order was entered validating the proposed bonds and all proceedings incident to validation. This appeal is from the validating decree.
It is first contended that the bond election was not held in compliance with law because the' ballot used did not conform to the requirements of Sec. 236.40, Florida Statutes, F.S.A.
The portion of Sec. 236.40, Florida Statutes, F.S.A., relied on to support this contention is,- “ * * * the form of ballots for such election shall be: ‘For Bonds’ or ‘Against Bonds.’ ” It appears that Sec. 236.40 has reference to paper ballots to be voted by hand while the election in question was held by voting machine and the ballots used were defined and prepared as required by Sec. 101.27, Florida Statutes, F.S.A. The resolution calling the bond election provided:
“Section 6. That the ballot used at said election shall be that portion of the cardboard or paper or other material within the ballot frames of the voting machines which shall contain a statement of the question submitted, and. said voting machines shall provide facilities for qualified electors who are freeholders to vote for or against the issuance of said bonds as they may choose. Said ballot as it appears within the ballot frames of the voting machines shall be in substantially the following form:
“■Official Ballot
Bond Election October 25, 1955
Special Tax School District No. 1 of Dade County, Florida
Yes No
Shall bonds of Special Tax School District No. 1 of Dade County, Florida, be issued at one time or from time to time in the aggregate principal amount of $34,500,000 for the purposes and to mature as stated in the resolution adopted on September 7, 1955, by The Board of Public Instruction of Dade County, Florida?
“Section 7. Those desiring to vote for the issuance of said bonds are instructed to turn down the pointer or lever over the word ‘Yes’ within the ballot frame containing the statement of the question relating to said bonds, and those desiring to vote against the issuance of said bonds are instructed to turn down the pointer or lever over the word ‘No’ within the ballot frame containing the statement of the questions relating to .said bonds.’’
A similar question was before the court in State v. City of Tallahassee, 142 Fla. 476, 195 So. 402, and was decided contrary to the contention of appellants. In fact we think this case concludes the point. The test as to legality of the ballot is whether or not the voters were afforded an opportunity to express themselves fairly and did in fact exercise the privilege. A reading of the returns from the bond election quoted in this opinion can leave no doubt that this was done.
The second point with which we are confronted is whether or not re-registration of freeholders required by Chapter *421 30682, Special Acts of 1955, was a lawful means to determine that a majority of freeholders in Special Tax School District No. 1, Dade County, participated in the election to approve said bonds as required by Section 6, Article IX, Constitution of Florida, F.S.A.
The record discloses that Chapter 30682, providing for re-registration, was duly passed, that registration for the bond election was regularly conducted and that the proper notice and advertisement were given. The decree validating the bonds found that these things were done, that the freeholder electors were repeatedly urged to register to vote, and that no freeholder was denied the right to vote in said election, that no one complained to the State Attorney or any one else that he was denied the right to vote in said election and that no one ever heard a rumor of any freeholder being denied the opportunity to vote. The County Superintendent of Public Instruction and the Supervisor of Registration verified the fact of intensively advertising the election and the number of qualified freeholders who were registered and took part in the election. A very similar question was presented and considered in State v. County of Sarasota Fla., 62 So.2d 708, and we think the opinion in that case concludes the question here.
The third and last point presented is whether or not Special Tax School District No. 1, Dade County, is authorized by Chapter 236, Florida Statutes, and Section 17, Article XII, Florida Constitution, F.S.A., to issue the proposed bonds for the ■school purposes indicated without providing for compliance with Section 12, Article XII, Constitution of Florida, F.S.A.
Chapter 236, Florida Statutes 1955, F.S.A., defines the procedure for issuing special tax school district bonds. It is 'shown that the required procedure was followed in this case with reference to segregated schools. In voting for the bonds the freeholders had in mind the extreme necessity for the contemplated improvements as disclosed by the record. In our view the segregation question has no place in this discussion or bond issue. The question before the voters was one of urgent school necessity and the qualified electors voted for the bonds to provide better school facilities for that reason and no other. The pressing necessity for better school facilities was revealed by the record and the bond issue was overwhelmingly approved on that basis. Any reasonable pattern for desegregation that may he approved in the future will still require more and better school facilities which can be taken care of when that contingency arises. To drag it into the picture at this time is beside the question. Board of Public Instruction v. State, Fla., 75 So.2d 832; Matlock v. Board of County Commissioners, Olk., 281 P.2d 169.
The decree appealed from is therefore affirmed.
Affirmed.
DREW, C. J., THORNAL, J., and PRUNTY, Associate Justice, concur.