311 So.2d 718 (1975)
MACCABEE INVESTMENTS, INC., a Florida Corporation, Appellant,
v.
William MARKHAM, Tax Assessor of Broward County, Florida, et al., Appellees.
No. 74-503.
District Court of Appeal of Florida, Fourth District.
April 25, 1975.
*719 Mallory H. Horton of Horton & Perse and Dubbin, Schiff, Berkman & Dubbin, Miami, for appellant.
Gaylord A. Wood, Jr., Fort Lauderdale, for appellees.
MAGER, Judge.
This is an appeal by Maccabee Investments, Inc., plaintiff below, from a final judgment entered in favor of William Markham, tax assessor of Broward County, et al., one of several defendants below, declaring certain property to be subject to personal property tax assessments.
In a suit seeking declaratory relief plaintiff contended that the personal property tax assessments imposed by the County were void and illegal by reason of the fact that such property was used in the furtherance of the performance of a public function or public purpose and thereby exempt from taxation.
The pertinent facts reflected in this record[1] indicate that the City of Fort Lauderdale owns a facility known as the Parker Playhouse as a result of a gift to the City from one Louis W. Parker. In 1966, a lease was entered into between the City (lessor) and Parker Theatre, Inc. (lessee), a nonprofit corporation, whereby the lessee agreed to construct a theatre to be used "principally for legitimate theatre productions and other productions of the performing arts for the entertainment and cultural instruction primarily for the residents of the City of Fort Lauderdale... ." The lease was for a term of twenty years at the end of which time (unless sooner terminated or otherwise extended) the facility would revert back to the City.
In 1969 the Parker Theatre, Inc. entered into an "agreement" with the plaintiff under the terms of which the plaintiff was granted "the sole and exclusive right and privilege, for a term of seven years commencing September 15, 1969 and ending on December 14, 1976 to book and engage all plays and attractions at the aforesaid theatre". *720 In consideration of such agreement the plaintiff agreed to pay Parker Theatre, Inc. a percentage of its profits derived from its bookings or a fixed amount, whichever was greater. The agreement required the plaintiff to present professional theatre ballet or concert for a minimum of sixteen weeks.[2]
The record reflects that the theatre was utilized by the plaintiff in accordance with its agreement with Parker Theatre, Inc. During the time when productions were not being staged the facilities were used from time to time by other charitable, cultural and educational organizations; sometimes a daily rental fee was charged and other times free use was provided.[3]
The personal property tax assessments in dispute were not imposed directly upon the City of Fort Lauderdale or Parker Theatre, Inc., but rather upon the tangible personal property of the plaintiff and the "possessory" interests of the plaintiff in the real property owned by the City and leased to Parker Theatre, Inc. based upon the plaintiff's use of such property.[4] The interest sought to be assessed and taxed was separate and apart from the fee or ownership interest in the property.
In its action for declaratory relief seeking to avoid such assessment, the plaintiff contended that the provisions of section 196.25 exempted the subject property from taxation,[5] the pertinent portions of which provide as follows:
"196.25 Use of exempt property for non-exempt purposes

(1) Any real or personal property which for any reason is exempt or immune *721 from taxation but is being used, occupied, owned, controlled or possessed, directly or indirectly by a person, firm, corporation, partnership or other organization in connection with a profit making venture, whether such use, occupation, ownership, control or possession is by lease, loan, contract of sale, option to purchase or in any wise made available to or used by such person, firm, corporation, partnership or organization, shall be assessed and taxed to the same extent and in the same manner as other real or personal property.
(2) This section shall not apply to property described in subsection (1) when:
(a) The property is used exclusively for religious, scientific, municipal, educational, literary or charitable purposes;

* * * * * *
(c) The property is owned or used by the state, any county, municipality, or public entity or authority created by statute and is leased or otherwise made available to such person, firm, corporation, partnership or organization by such public body for a consideration in the performance by the public body of a public function or public purpose authorized by law, or which property prior to the effective date of this section was leased for valuable consideration for purposes not otherwise exempt hereunder; ..." (Emphasis added.)
The exemption of municipally owned or used property from taxation is provided for in the Florida Constitution under Art. VII, sec. 3(a) as follows:
"(a) All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation. A municipality, owning property outside the municipality, may be required by general law to make payment to the taxing unit in which the property is located. Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation."
With regard to the determination of the tax exempt status of property the Supreme Court of Florida has held that the terms "municipal purpose" and "public purpose" are synonymous; and further, that it is the use to which the municipal property is put that is determinative of whether property loses or retains its exempt status. Dade County v. Pan American World Airways, Inc., Fla. 1973, 275 So.2d 505; State v. Inter-American Center Authority, Fla. 1955, 84 So.2d 9. The court has also recognized that a facility is capable of serving a "municipal" or "public purpose" if utilized "primarily and predominantly for the public benefit even though there may be some incidental private purpose, too", Dade County v. Pan American, supra; and that the requirement "for exclusive use" is not affected by a private purpose incorporated into the meaning or "public purpose", Dade County v. Pan American, supra.
As the Supreme Court indicated in Daytona Beach Racing and Rec. Fac. Dist. v. Paul, Fla. 1965, 179 So.2d 349, 352:
"The mere fact that someone engaged in private business for private gain will be benefitted by every public improvement undertaking by a governmental agency, should not and does not deprive such improvement of its public character or detract from the fact that it primarily serves a public purpose .. .".
In the Dade County case, the court held that an airport facility leased by the county to a commercial airline was used for a *722 public purpose and came within the statutory exemption under which the leasehold interests held by the airline were exempt from taxes (the public purpose found by the court was that of providing indispensable air transportation and an air terminal to the metropolitan area of Dade County). In the Daytona Beach case, supra, the court found that a speedway facility constructed through governmental revenue bonds and leased by a speedway corporation for private profit was exempt from taxation such facility serving a public purpose (the public purpose of the facility was the successful operation of the speedway as a tourist and business attraction to the area).
The question of when a function or purpose is deemed to be a "public purpose" is a determination largely dependent upon the particular facts and circumstances of each case measured in light of the constitutional and statutory terms and provisions. In other words, the primary and predominant nature and object of the function and (exclusive) use must be carefully examined and evaluated in each specific case to ascertain whether a public purpose or a private purpose is being served. For example, while the court has held that a racing facility, an airport terminal and an airport restaurant serve a "public purpose" and are exempt from taxation (see the Daytona Beach, and Dade County cases, supra, and Hillsborough County Aviation Authority v. Walden, Fla. 1968, 210 So.2d 193), the court has held that a baseball stadium, an airport motel and a civic center did not serve a "public purpose", Brandes v. City of Deerfield Beach, Fla. 1966, 186 So.2d 6; Walden, supra; City of West Palm Beach v. State, Fla. 1959, 113 So.2d 374; but see Starlight Corp. v. City of Miami Beach, Fla. 1952, 57 So.2d 6; State v. City of Tallahassee, 142 Fla. 476, 195 So. 402 (1940); State v. McDavid, 145 Fla. 605, 200 So. 100 (1941); see also State v. Inter-American Center Authority, supra; see also 47 A.L.R.3d 79, annotation: Lease of Municipal Property; 54 A.L.R.3d 402, annotation: Availability of Tax Exemption to Property held on Lease from Exempt Owner.
A review of the numerous decisions involving the consideration of the exempt status of certain properties and interests reveals that there is no precise rule or standard by which to determine whether the project, facility or activity is serving a municipal or public purpose within the meaning of the constitutional provision. Not only is there an absence of a precise criteria but, in addition, the courts have stated that this determination "is not static". This was astutely pointed out by the late Justice Terrell in State v. City of Tallahassee, supra, when he observed that "each generation may determine its concept of these things ..."; similarly, he observed in State v. McDavid, supra, "a municipal purpose is much broader in its scope than it was a generation ago. Under our system of jurisprudence, constitutional validity may be determined by practical operation and effect...."
In 31 Fla.Jur., Taxation, the textwriter points out:
"In determining whether property is used exclusively for a public purpose within the intent of the constitutional provision, one must ask whether the particular facility is a public purpose, and if so, whether the property is used exclusively for such purpose. The term `public purposes' as used in such provision means projects primarily and predominantly for the public benefit, even though there may be also some incidental private purpose. Property can be used exclusively for public purposes if the private purpose has merged into the term `public purposes', and if the property is used solely for such purposes. ..." (sec. 193, at p. 255) (Emphasis added.)
See also Dade County v. Pan American, supra.
The Florida legislature has endeavored to establish a criteria for determining the tax exempt status of property owned by *723 governmental units but utilized by nongovernmental lessees as follows:
"196.199 Exemptions for property owned by governmental units

(1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions:
* * * * * *
(c) All property of the several political subdivisions and municipalities of this state which is used for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law.
(2) Property owned by the following governmental units but used by nongovernmental lessees shall only be exempt from taxation under the following conditions:
(a) Leasehold interests in property of the United States, of the state or any of its several political subdivisions, or of municipalities, agencies, authorities and other public bodies corporate of the state shall be exempt from ad valorem taxation only when the lessee serves or performs a governmental, municipal or public purpose or function, as defined in § 196.012(5). In all such cases, all other interests in the leased property shall also be exempt from ad valorem taxation." (Emphasis added.)
The public purpose or function hereinabove mentioned is defined in sec. 196.012(5) as follows:
"(5) Governmental, municipal, or public purpose or function shall be deemed to be served or performed when the lessee under any leasehold interest created in property of the United States, the state or any of its political subdivisions, or any municipality, agency, authority, or other public body corporate of the state, is demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit, or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds. ..." (Emphasis added.)
Based upon the rationale of the reported cases we are of the opinion that the construction and operation of a facility owned by a municipality and used principally for legitimate theatre productions and other productions of the performing arts for the entertainment and cultural instruction of residents of the City serves a municipal or public purpose or function within the definition of sec. 196.012(5) and within the meaning of Art. VII, sec. 3 of the Constitution. The function or purpose served is one which the City itself could properly perform or serve and is one which would "be a valid subject for the allocation of public funds". The fact that the function performed or purpose served has been undertaken by the plaintiff (a private production company) pursuant to an agreement with the City's lessee (Parker Theatre, Inc.) does not alter the demonstrated municipal or public purpose or function.[6] We can perceive of a no more fitting demonstration of a public purpose or function *724 than the furnishing of cultural facilities and programs to the residents of a community.[7]
In a somewhat analogous case, the State of South Carolina sought to collect taxes on a theatre being operated by the City of Columbia within the City Hall complex. State v. City of Columbia, 115 S.C. 108, 104 S.E. 337 (1920). The applicable South Carolina constitution provided for the exemption of municipal property "used exclusively for public purposes". In that case, it appears that the city was unable to induce private capital and proceeded to build a theatre within the city hall known as the "City Opera House of Columbia Theatre". The city council leased the theatre to private persons who produced theatrical, musical and other productions to which the public was admitted upon payment of a charge. In upholding the tax exempt status of that property the Supreme Court of South Carolina observed:
"The state does not and cannot well contend that the city hall has not been used exclusively for public purposes. Good theatrical and musical performances educate, enlighten, and afford pleasureable entertainment to the people, which makes them better citizens. ..." (at 337) (Emphasis added.)
A Pennsylvania case of more recent vintage and one which we believe is particularly pertinent to the instant situation is the decision in In re Spectrum Arena, Inc., U.S.D.C.E.D.Pa. 1971, 330 F. Supp. 125. There, the federal court was presented with the issue of whether a leasehold interest in an arena was exempt from real estate taxes on the basis that the facility was being used for public purposes. It appears that the City of Philadelphia, which owned the land, entered into a leasehold agreement with one Wolman under the terms of which the lessee was to construct an arena at the lessee's sole expense, somewhat similar to the instant situation. The arena known as the Spectrum Arena was to be used for professional and amateur entertainment, musical concerts, other cultural events and as a facility for conventions and other assemblies; other uses included hockey, baseketball, roller derby, track meets, boxing, wrestling, figure skating and tennis, ice shows and circuses. The Pennsylvania assessment law provided an exemption of "public property used for public purposes". The U.S. District Court concluded that
"By providing the public with amusement, pleasure, and entertainment, the municipally owned Spectrum clearly is public property used for public purposes."
In reaching this decision the federal district court referred to the "Whereas" clause of the lease which stated that the interest of the public would be served by such a facility; the court also referred to the formal action taken by the city council in passing an ordinance approving the lease agreements.[8]
The court also considered the argument that the "private profit motive" (of the lessee) precluded the operation of the Spectrum from being a public purpose. In referring to Pennsylvania decisional law the U.S. District Court observed that "it is the use of the property and not the use of the proceeds from the property which determines whether tax exemption may constitutionally be granted". The court concluded that the public facility leased for operation to private parties deriving a profit therefrom instead of being operated *725 by the public authority itself did not destroy the tax exempt status of the facility.
It seems to us, by analogy to the Daytona Beach racing case, supra, (wherein the operation of a speedway facility by a private corporation pursuant to a sublease did not detract from the predominantly public purpose of such facility) that a race car driver turning a lap at the Daytona Beach race track performs no higher public purpose than an actor reading his lines in the Parker Playhouse.
We therefore conclude that since the real and personal property of the City of Fort Lauderdale and Parker Theatre, Inc.[9] are being used exclusively for public purposes (notwithstanding the incidental private profit derived therefrom) the tangible personal property of the plaintiff and the "possessory" interest of the plaintiff acquired through its agreement with the lessee of the City are exempt from taxation.[10]
In arriving at this determination we have not overlooked the defendant's contention that the trial court "lacked jurisdiction over the subject matter" by reason of the fact that the plaintiff's declaratory suit was not instituted within 60 days from the time the assessment roll was certified as required by sec. 194.151, F.S. (transferred to sec. 194.171(2). Said section provides as follows:
"194.171 Circuit court to have original jurisdiction in tax cases

* * * * * *
(2) No action shall be brought to contest a tax assessment after sixty days from the date the assessment [roll] is certified for collection under section 193.122(2)."
When the plaintiff filed its original complaint (which was subsequently dismissed and refiled) the defendant answered and raised the affirmative defense of "lack of jurisdiction" by reason of sec. 194.151. The trial court declared that although the filing of plaintiff's complaint was more than 60 days after the assessment roll was certified, the complaint was not subject to dismissal because "the initial pleading claims that the tax is void. Since the tax which was void as opposed to being voidable may be attacked at any time, the motion is denied on that ground."
The defendant has sought to review the propriety of this determination, presumably, because if the trial court was in error then the complaint should have been dismissed with prejudice and the issue of the tax exempt status of the property would not have to be reached. However, the defendant has failed to cross-assign as error the ruling of the trial court; the failure to file a cross-assignment of error will preclude appellate consideration of any question pertaining to a ruling adverse to the appellee unless the error is fundamental or jurisdictional. See 2 Fla.Jur., Appeals, Sections 129, 287.
We, therefore, must ascertain whether the failure to comply with Section 194.151 is "jurisdictional" or whether said section creates a nonjurisdictional statute of limitation.
In Dade Drydock Corp. v. Broward County, Fla.App. 1971, 250 So.2d 286, 287, this court, in a per curiam opinion, affirmed a final judgment dismissing with prejudice a suit challenging a tax assessment. This court observed that:
"... The suit was filed more than sixty (60) days from the time the assessment *726 roll was certified, and thus under Section 194.151, F.S. 1969, F.S.A., the court lacked jurisdiction of the subject matter... ."
However, in Lake Worth Towers, Inc. v. Gerstung Fla.App. 1971, 251 So.2d 27 (reversed Fla. 1972, 262 So.2d 1), involving a dismissal based upon failure to comply with sec. 194.151 (formerly sec. 192.21(2), F.S. 1967), this court referred to said section as being a "statute of limitation" (and hence not jurisdictional).
In Askew v. MGIC Development Corporation of Florida, Fla.App. 1972, 262 So.2d 227, this court then recognized its own conflicting descriptions of sec. 194.151 in the Dade Drydock Corp. and Lake Worth Tower cases. However, the court did not resolve this question inasmuch as it was determined that this issue was unnecessary to the appellate disposition of the case. From our reading of the statute and a review of those cases containing the statute, we are of the opinion that section 194.151 is a statute of limitation which must be pled as an affirmative defense and which can be waived; the failure to comply with the statute does not affect the trial court's jurisdiction over the subject matter. In this regard it is interesting to note that in reviewing this court's decision in Lake Worth Towers, Inc., the Supreme Court of Florida referred to section 194.151 as being a "statute of limitations". (Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1, 4).
Since Section 194.151 is a statute of limitation which can be waived if not properly raised in the pleadings, it follows that a determination by the trial court that the statute does not apply is not the subject of appellate review if not properly preserved by a cross-assignment of error. See 21 Fla.Jur., Limitations of Action, sec. 87. We would further observe lest the defendant feel that he has "lost his point because of a technicality", that the trial court was correct in determining that the assessment was void as opposed to being voidable; hence it was unnecessary to comply with the time limitations set forth in sec. 194.151 as well as exhausting other administrative remedies. Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1; Walden v. University of Tampa, Incorporated, 304 So.2d 134 (Fla.App. 1974).[11] These cases stand for the proposition that a tax assessment on property that is not taxable because of its exempt status is "void"; but see Dade County v. Transportes Aereos Nacionales, S.A., Fla.App. 1974, 298 So.2d 570.
Accordingly, the final judgment declaring the property interests of the plaintiff to be taxable for the years 1970, 1971, and 1972 is reversed and the cause remanded for further action by the trial court consistent herewith.
Reversed and remanded.
WALDEN, J., concurs.
CROSS, J., dissents, without opinion.
NOTES
[1] The parties agreed for the case to be decided on the basis of the record in the court file. No testimony was taken.
[2] The 16-week presentation occurred during the period of time between December and April.
[3] At the final dress rehearsal prior to the opening of a new show drama classes from various local educational institutions would be invited to attend. Sometimes the facility would be made available to a charity without charge; in other instances nonprofit organizations might make use of the facility for a daily rental fee of approximately $300.
[4] It is noted that the pleadings, other documents and evidence in the record make reference only to commercial personal property tax assessments for the years 1970, 1971 and 1972. Plaintiff's complaint attaches two personal property tax notices to it which are referred to as being void and illegal. The first apparent reference to an assessment on plaintiff's "possessory" interest is made by the tax assessor in his appellate brief. In this connection defendant-appellee also makes reference to a third tax notice which is not contained in the record on appeal. (Folio #6919-009). It may be presumed that the issue of a "possessory" interest, although not raised in the pleadings, was in fact tried with the express or implied consent of the parties and therefore can be treated by this court as if they had been raised by the pleadings. Beefy Trail, Inc. v. Beefy King International, Inc., Fla.App. 1972, 267 So.2d 853.

However, it makes little difference in the ultimate disposition of the appellate issue as to whether we have before us the question of tax assessment on tangibe personal property or tax assessment on a possessory interest in real property inasmuch as a determination of an exemption of the leased property from taxation will embrace "all other interests in leased property" real or personal, possessory or otherwise. See sec. 196.199(2)(a), F.S. In other words, if it is determined that the leased property is being used for a "public purpose" then such property would be exempt from the commercial personal property tax assessment a well as an assessment predicated upon the possessory interest of the plaintiff in the property owned in fee by the City of Fort Lauderdale. It is also noted that defendant also makes reference in his appellee's brief to Rules 12B-1.108 and 12B-1.109, Rules and Regulations of the Department of Revenue, relating to a taxability and continuity of a possessory interest. As far as the record reflects these rules were never raised below and while this court may take judicial notice of departmental regulations we deem it unnecessary to do so in order to resolve the appellate issue. See 13 Fla.Jur., Evidence, sections 19, 28.
[5] Sec. 196.25, F.S., which was in existence at the time the suit was commenced in May 1971 was subsequently repealed by chap. 71-133, Laws of Fla., effective December 31, 1971. The substance of sec. 196.25 was not changed by chap. 71-133 and the provisions formerly appearing in sec. 196.25 are scattered throughout chap. 71-133. See in particular sec. 196.001 and sec. 196.196, F.S. Although our determination is based upon a consideration of both chap. 71-133 and sec. 196.25 and their applicability to the facts herein, a similar result would obtain based solely upon a consideration and application of sec. 196.25. Cf. Straughn v. Camp, Fla. 1974, 293 So.2d 689; see also Goodfriend v. Druck, Fla. 1974, 289 So.2d 710.
[6] The parties have seemingly engaged in a semantical dispute over the description of the contractual arrangement between the plaintiff-producer and the Parker Theatre, Inc. the City's lessee. The plaintiff refers to this arrangement as "an agreement" and not a "lease"; the defendant, while not conceding this contention, suggests that it makes no difference whether the contractual arrangement is considered an "agreement" or a "lease" (sublease). We agree. It is a distinction without a difference insofar as the determination of the basic issue in this appeal, namely, whether municipally-owned property leased to a private organization (and otherwise ultilized by agreement or sublease) is being used for a public purpose so as to be entitled to an exemption from taxation.
[7] Without attempting to analyze those "public purposes" previously held to have been served through the use of public funds for construction or through leaseholds of public property we note that some of the projects found to serve a public purpose included an international trade market, construction of an auditorium, stadium, boat basin and recreational center, a warehouse, an overhaul shop leased to airlines, an office building for rental purposes, a speedway, public parking facilities, a restaurant at an airport, airport and golf courses.
[8] These two considerations may also be found in the instant case.
[9] Interestingly, the evidence in the record reflects that no ad valorem tax has ever been imposed upon Parker Theatre, Inc., the lessee of the City of Fort Lauderdale.
[10] It is to be noted that the last sentence in sec. 196.199(2)(a) which prescribes the criteria for the exemption of leasehold interests of public property provides that "All other interests in the leased property shall also be exempt from ad valorem taxation", i.e., the "possessory" interest of the plaintiff in the instant property.
[11] Although the 60-day limitation is not applicable the action must be brought within the time limitation of sec. 95.08, F.S., as discussed in these decisions.